# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

M. L. HARRIS AND L. W. KILGORE v. S. W. COLEMAN, SPECIAL COMMISSIONER, ET ALS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Will H. Nickels* and *John R. Todd, Jr.,* for the appellants.

*S. H. Bond,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Wise county, dismissing a petition filed by applicants in the chancery cause of J. H. A. Smith against J. M. Elliott and Lear C. Elliott.

At the first December Rules, 1921, Smith instituted in the Circuit Court of Scott county, a creditors' suit to subject the lands of J. M. and Lear C. Elliott to the payment of a judgment obtained by him against them for the sum of $450. The bill of complaint was taken for confessed, and by decree an account of liens was ordered. It appearing from the report of the commissioner that the rents from the thiry-six acres of land were insufficient to discharge Elliott's indebtedness, a decree of sale was entered and S. W. Coleman, an attorney, was appointed a special commissioner to sell the land.

Pursuant to the terms of the decree, Coleman offered the land for sale at public auction and same was bid in by one C. W. Dougherty. Prior to the confirmation of the report of sale to Dougherty, the Elliotts put in an upset bid, which was accepted by the court, and a resale decreed. At the second sale N. M. Horton became the apparent purchaser, at the price of $2,900. That sale was duly reported and confirmed.

On the 25th day of July, 1924, Coleman, commissioner, reported that the purchase money had been paid, and

by proper decree he was directed to convey the land to Horton, which was done.

By deed bearing date the 9th day of September, 1924, Horton conveyed the land to Coleman, who in turn, on the 2nd day of March, 1925, conveyed the same to M. L. Harris, one of the appellants. Harris, being financially unable to meet the purchase money notes as they fell due, reconveyed the land to Coleman on the 22nd day of May, 1929.

On the 25th day of May, 1929, appellants secured from L. C. Robinett, *nee* Elliott, and her husband, M. M. Robinett, the following contract:

"THIS CONTRACT made and entered into on this the 14th day of May, 1929, by and between L. C. Robinett and Mack Robinett, her husband, of Indian Springs, Tennessee, parties of the first part and M. L. Harris and L. W. Kilgore, of Scott county, Virginia, of the second part.

"WITNESSETH: That for and in consideration of the sum of $250 paid in hand or on such terms as may be agreed upon by the parties hereto, the parties of the first part doth sell, transfer and assign to the parties of the second part, all the right, title and interest which the said L. C. Robinett and Mack Robinett, has or may have in the funds in the hands of S. W. Coleman, special commissioner, who sold and conveyed the lands of L. C. Robinett and J. M. Elliott, in the chancery cause pending in the Circuit court of Scott county, Virginia, in which J. H. A. Smith was plaintiff and L. C. Robinett *et al* were defendants.

"The object of this contract is to sell, assign, transfer and release to the parties of the second part all rights, and interests the parties of the first part have in the funds arising out of the sale of her lands in Scott county, Virginia, known as the Caroline Elliott tract of land on Big Moccasin creek.

"Witness the following signatures and seals this the day and date first above written.

"Witness C. C. Harris.

"L. C. ROBINETT    (Seal)
"M. M. ROBINETT    (Seal)."

It was to enforce this contract that the petition of appellants was filed. After setting forth the history of the litigation, the petition alleges:

"That by a contract in writing bearing date of the 14th day of May, 1929, your petitioners purchased the entire interest of L. C. Robinett and her husband, M. M. Robinett, in the funds in the hands of S. W. Coleman, commissioner, belonging to the said L. C. Robinett and that the said L. C. Robinett and her husband, M. M. Robinett, sold, transferred and conveyed all their rights, title and interest in said funds to your petitioners for a valuable consideration of one lot or parcel of land situate in the town of Kingsport, Tennessee, valued at the sum and price of $250, and your petitioner has made and executed a good and sufficient deed of general warranty to the said L. C. Robinett for said lot or parcel of land, and presented same to her which she later refused to accept and which said deed to said property is herewith filed in escrow for the benefit of the said L. C. Robinett. A certified copy of the above mentioned contract from L. C. Robinett and M. M. Robinett to your petitioners, L. W. Kilgore and M. L. Harris, is filed herewith and made a part hereof as 'Exhibit Contract.'

"That since your petitioners purchased the interest of the said L. C. Robinett and M. M. Robinett in the funds in the hands of S. W. Coleman, commissioner, that they have called upon Mr. Coleman for settlement and payment by him to your petitioners of their money, the interest of the said L. C. Robinett in said funds to the amount of $1,450, with interest thereon from the 22nd day of December, 1922, the date of the sale of said land by Special Commissioner Coleman, and that Mr. Cole-

man refused to pay to your petitioners anything or any sum at all in his hand now belonging to your petitioners which amount was formerly the funds of the said L. C. Robinett, and Mr. Coleman flatly refuses to make settlement with your petitioners and has declared his purposes not to make settlement, or pay your petitioners anything."

The judge of the circuit court having been a former law partner of S. W. Coleman, and the Elliotts being indebted in a large sum to the firm of Coleman and Carter, the cause was transferred to the Circuit Court of Wise county.

To the petition the appellees filed the following answer:

"To the Honorable Ezra T. Carter, Judge of the Circuit Court of Scott county, Virginia:

"The separate answer of S. W. Coleman, special commissioner, and L. C. Robinett and M. M. Robinett to a petition exhibited against them in said court by L. W. Kilgore and M. L. Harris in the chancery cause of *J. H. A. Smith* v. *L. C. Robinett et al.,* depending in said court, and answer of petition of J. J. Ferguson.

"Respondents deny that S. W. Coleman, special commissioner, has in his hands the sum of $1,450 derived from the sale of the land in the above styled chancery cause or any part thereof.

"Respondents will here set forth the entire facts in connection with the transaction.

"Some few days prior to the re-sale of the lands mentioned, J. M. Elliott in behalf of himself and sister, L. C. Robinett, your respondent went to the office of respondent, S. W. Coleman, and represented to him that they had made arrangements to get money to pay off all the judgment liens then existing against the land in question within the next ten days or two weeks; that the land was worth thirty-six hundred dollars; that it was their old home place; that they prized it very highly, and wanted to keep it, and urgently requested S. W. Coleman to pro-

cure some trustworthy person to bid off the land for them and to allow no one to purchase same for less than three thousand dollars; that the said J. M. Elliott and his sister, L. C. Robinett, would go to the office of S. W. Coleman within a very short while and pay off all the liens against the lands, costs and commission of sale, and have the person who bid in the land to convey same to the said L. C. Robinett on her paying off all liens against it and the costs and commissions of sale.

"Pursuant to said request of J. M. Elliott, S. W. Coleman did procure N. M. Horton of Gate City, Virginia, to be present at the sale and to bid as much as three thousand dollars, if necessary to bid in said land, and prevent any one aside from J. M. Elliott and his sister, your respondent, from purchasing the land, and S. W. Coleman promising N. M. Horton that he would save him harmless in making said purchase, and in accordance with the said arrangement N. M. Horton bid in the land at the price of twenty-nine hundred dollars which was reported to the court and the sale approved and confirmed. This was done solely for the purpose of accommodating J. M. Elliott and L. C. Elliott and was in conformity with the agreement of S. W. Coleman with them. S. W. Coleman had never seen the land, knew nothing of its value and depended solely on what J. M. Elliott told him.

"N. M. Horton never paid S. W. Coleman, special commissioner, one cent on said land and it was never intended he should, but said Horton purchased same at the request of S. W. Coleman agreeing to convey same to any one designated by S. W. Coleman. Soon after the sale to N. M. Horton, S. W. Coleman informed J. M. Elliott, M. M. Robinett and his wife, L. C. Robinett, of what he had done and requested them to come to his office and pay off the said judgment liens against the lands, costs and commissions of sale in accordance with their agreement with him, but not having heard from them again called their attention to it, and finally J. M. Elliott and

M. M. Robinett went to the office of S. W. Coleman, at Gate City, Virginia, and related to him that they were disappointed in getting the money to pay off the liens aforesaid and the costs and commissions of sale. S. W. Coleman informed them that N. M. Horton did not want the land, that he had been procured to purchase it wholly for the accommodation of them and on the promise of S. W. Coleman to save them harmless, that the complainant, J. H. A. Smith, and W. H. Bowling, a judgment creditor, were pushing for their debts. They then requested S. W. Coleman to pay off the liens against the land which were pressing and to get the title to the land in his name for the benefit of L. C. Robinett and to protect him, S. W. Coleman, in such sums as he had paid off on the land, and in the meantime they would try to sell the land privately and get the funds necessary to reimburse S. W. Coleman for what he had paid off and pay off the other said judgments and for S. W. Coleman also to try to sell said land. Pursuant to said last agreement S. W. Coleman paid off the judgment of J. B. Gose, J. H. A. Smith, W. H. Bowling and a number of small judgments out of his own funds, including a number of smaller expenditures made by respondent S. W. Coleman. Pursuant to said agreement and for the purpose of securing your petitioner, S. W. Coleman, Mr. N. M. Horton conveyed said land to S. W. Coleman. Afterwards S. W. Coleman sold the land to M. L. Harris for the price of three thousand dollars on seven equal instalments reserving a vendor's lien on some for the purchase price, and informed J. M. Elliott and L. C. Robinett of what he had done informing them that it was the best price procurable for said land.

"M. L. Harris failed to pay off any of the purchase money notes, not paying enough to pay off the accrued interest and on the —— day of —— 1928, informed S. W. Coleman he could not comply with his agreement and wanted to reconvey the land to S. W. Coleman, S. W. Coleman having learned that M. L. Harris was insolvent,

he communicated with and informed J. M. Elliott and L. C. Robinett that M. L. Harris could not pay for same and wished to reconvey same to him, and J. M. Elliott and L. C. Robinett agreed for M. L. Harris to reconvey the land to S. W. Coleman, and M. L. Harris did accordingly reconvey the land to S. W. Coleman, his purchase money notes having been redelivered to him and S. W. Coleman paid M. L. Harris one hundred dollars for some work he claimed to have done on the land, and released him from his obligation.

"There is not one cent in the hands of S. W. Coleman, belonging to L. C. Robinett, but on the contrary she is indebted to him. S. W. Coleman simply holds the legal title to said land for security for what he has paid out on said land. He was never the beneficial purchaser of same, but the conveyance was made to him by N. M. Horton solely for the purpose of securing him the sums he had paid out on said land and he is ready to convey said land to any one the court directs him to convey it to on the payment of the sums paid out by him with interest on same.

"Your respondent S. W. Coleman was acting solely for the purpose of accommodating J. M. Elliott and L. C. Robinett and trying to assist them to hold their old home place.

"Your respondents M. M. Robinett and L. C. Robinett allege and represent that they did make the assignment set forth in the petition of L. W. Kilgore and M. L. Harris, but same was procured by fraud and misrepresentation, and L. W. Kilgore and M. L. Harris at the time they made the assignment to them knew there was nothing in the hands of S. W. Coleman going to L. C. Robinett. M. L. Harris and L. W. Kilgore represented to respondents L. C. Robinett and M. M. Robinett that the lot in question which they were to convey to L. C. Robinett was a very valuable lot, was worth two hundred and fifty dollars and was well located in the town of Kingsport, lay well and was a first-class lot. Your said respon-

·dents had never seen said lot and relied wholly on what petitioners represented to them as to the location, kind ·and value of the lot.

"Respondents allege and represent that the lot is practically worthless, is badly located, lays badly and is in fact worth practically nothing. On learning what kind ·of a lot it was respondents would have nothing to do ·with it.

"Your respondent, S. W. Coleman, represents that he ·did file a report saying that the purchase price of twenty-nine hundred dollars had been paid him in full by N. M. Horton, but as a matter of fact, not one cent was ever paid by N. M. Horton to him or by any other person on the purchase price of said land.

"Your respondent asks the court, if deemed proper, to permit him to change his report showing the actual facts in connection with it.

"Your respondent, S. W. Coleman, has paid out on said land more than one hundred dollars more than he received, and otherwise in the way of rents, on same, in addition to the liens paid off by him.

"Respondents deny all other allegations of said petition, not heretofore admitted or denied. * * *."

The cause was heard upon the bill, answer, report of a special commissioner and exceptions thereto, and depositions of witnesses. On February 12, 1932, the court confirmed the report of the special commissioner, which sustained *in toto* the contention of appellees, and dismissed the petition. That action of the court is assigned as error.

The sole reliance of appellants is based upon the decree confirming the report of Coleman, commissioner, dated the 25th day of July, 1924, setting forth that the purchase money had been paid by Horton. It is the contention of appellants that the court record is a verity, that the record shows conclusively that Coleman has in his hands the sum of $1,450 belonging to Mrs. Robinett, and that by

virtue of their contract with her they are entitled to have paid to them that amount.

Numerous authorities are cited to sustain the proposition that the records of a court are a verity. So firmly imbedded is that doctrine in our jurisprudence that a discussion is deemed unnecessary. However, no authority has been cited, nor can one be found that holds that the recital in a decree, that the purchase money from a sale of land in a creditors' suit has been collected, is even *prima facie* evidence that the money has not been disbursed or properly accounted for. ,

In the role of Good Samaritan to the Elliotts, Coleman has placed himself in the attitude, by the decree entered at his instance, of stating as a fact that which subsequent developments show is not a fact. That is unfortunate for him but the overwhelming proof is that no moral turpitude attaches to his conduct. The evidence of Mr. Horton, the president of the local bank, is sufficient to show Coleman's *bona fides*. In addition thereto, the evidence of Mrs. Robinett and her brother plainly shows that Coleman held the land in trust for them; that they make no claim to any fund held by him, and that in reality, until Coleman is paid what is justly due him in fees and advancements, they do not expect a conveyance of the land to them. In this cause there is no controversy between Coleman and Mrs. Robinett. Coleman concedes in his answer and deposition, and Mrs. Robinett acquiesces in the proposition, that the land is in trust for her. So much for that phase of the case.

We come now to a discussion of the execution of the contract relied upon by appellants. No doubt the chancellor, from reading the evidence, was impressed, as we are, that the contract was procured under circumstances which bear unmistakable evidences of fraud. From a perusal of the deposition of Mrs. Robinett, it is impossible to escape the conclusion that she is a woman of meagre educational and worldly endowments. She states in her deposition that when first approached by appellants, she

told them that she had no interest in any fund in the hands of Coleman; that Coleman was authorized by her, through her brother acting as her agent, to "handle" the property to her best advantage. She further states that she did not understand the nature of the contract, but that, upon the insistence of appellants that she did have some interest in a fund in the hands of Coleman, she executed the contract; that she was to be paid the sum of $250, which was represented by a lot situated in the city of Kingsport, Tennessee; and that upon a realization of what she had done, she repudiated the contract and refused to accept a deed for the lot which she ascertained was practically worthless.

For the sake of argument, it may be conceded that the lot was worth the sum of $250, yet it is inexplicable, unless Mrs. Robinett merely meant to assign her right of redemption in the Scott county land, that she would execute a contract assigning the sum of $1,450, with interest (making the total approximately $2,300), for the pittance of $250.

Though appellants claim to be *bona fide* purchasers of the $1,450, Coleman states in his deposition that he informed Harris of the true situation at the time Harris purchased the land, and again before the assignment was obtained. That statement was accepted by the chancellor, and we have no authority to disregard his conclusion.

The decree must, therefore, be affirmed.

*Affirmed.*